IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


William Hendricks,

                                           Civ. No. 09-6336-AA
                                       OPINION AND ORDER

        Plaintiff,


    v.


Marist Catholic High School,
a domestic non-profit
organization, and Archdiocese
of Portland in Oregon, an
assumed business name of
Roman Catholic Archbishop of
Portland in Oregon, and
Successors, a corporation sole,

        Defendants.

_____
_____

Craig A. Crispin
Shelley D. Russell
Crispin Employment Lawyers
1834 S.W. 58th Ave., Suite 200
Portland, OR 97221
     Attorneys for plaintiff

Page 1 - OPINION AND ORDER

Thomas V. Dulcich
Anna Helton
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. 5th Ave., Suite 1900
Portland, OR 97204
        Attorneys for defendants

AIKEN, Chief Judge:

        Defendants Marist Catholic High School and the Archdiocese
of Portland in Oregon move for summary judgment pursuant to Fed.
R. Civ. P. 56 on plaintiff William Hendricks' claims for age
discrimination and wrongful discharge.  The Court heard oral
argument on March 14, 2011.  After considering the argument and
all the evidence, defendants' motion is denied.

<u>BACKGROUND</u>

        Plaintiff taught philosophy and religion at Marist Catholic
High School (Marist) from 1996 to 2008, when Marist declined to
renew plaintiff's annual contract.  Plaintiff was told his
contract was not renewed because of budget shortfalls.  Plaintiff
was sixty-five years old.

        In his tenure at Marist, plaintiff taught various theology
courses.  Since 2005, plaintiff taught part-time and directed
Marist's Christian Service Experience program part-time.

        On September 22, 2008, plaintiff filed a complaint with the
Oregon Bureau of Labor and Industry (BOLI) alleging that
defendants unlawfully terminated his teaching contract based on
his age, while retaining a younger, less qualified teacher.  On
September 4, 2009, BOLI dismissed plaintiff's claim.  On December
3, 2009, plaintiff filed a complaint against defendants alleging

Page 2 - OPINION AND ORDER

age discrimination under both federal and state law, as well as unlawful termination under the common law tort of wrongful discharge.

Defendants contend plaintiff's claim is barred by the First Amendment's ministerial exception, and move for summary judgment.

<u>STANDARDS</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitles to a judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. <u>T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determined the authenticity of a dispute. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id</u>. at 324.

Page 3 - OPINION AND ORDER

Special rules of construction apply when evaluating summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  <u>T.W. Electrical</u>, 809 F.2d at 630.

DISCUSSION

Defendants argue that plaintiff's claims invoke the ministerial exception.  Under the First Amendment's Free Exercise and Establishment clauses, the ministerial exception bars some employment claims between ministers and religiously affiliated employers.  <u>See</u> <u>Bollard v. Cal. Province of Soc'y of Jesus</u>, 196 F.3d 940, 947 (9th Cir. 1999).

It is undisputed that Marist qualifies as a religious organization for the purposes of a ministerial exception analysis.  Further, it is undisputed that if plaintiff is held to be a "minister," his claims are barred because an employment decision of a religious organization is at issue.  <u>See</u> <u>Alcazar v. Corp. of the Catholic Archbishop of Seattle</u>, 598 F.3d 668, 674 (9th Cir. 2010) ("The ministerial exception encompasses all 'tangible employment actions' and disallows lawsuits for damages based on 'lost or reduced pay.'") (quoting <u>Elvig v. Calvin Presbyterian Church</u>, 375 F.3d 951, 964, 966 (9th Cir. 2004)).

A.  The Free Exercise Clause

Defendants assert that because plaintiff's position was inherently religious in nature, this court should consider him a

Page 4 - OPINION AND ORDER

"minister." Defendants' analysis relies on the Fifth Circuit's
"functional approach" test, wherein a person is a "minister" if
the person: "(1) is employed by a religious institution, (2) was
chosen for the position based 'largely on religious criteria,'
and (3) performs some religious duties and responsibilities."
Starkman v. Evans, 198 F.3d 173, 176 (5th Cir. 1999).

        Alternatively, defendants argue that plaintiff is a
"minister" under the Fourth Circuit's "primary duties" test,
wherein an employee is a "minister" when the majority of his or
her primary duties are ministerial in nature.  See EEOC v. Roman
Catholic Church of Raleigh, 213 F.3d 795, 801 (4th Cir. 2000).
Duties that are traditionally construed as ministerial include:
spreading the faith, church governance, supervision of a
religious order, and supervision or participation in religious
ritual or worship.  Id.

        The Ninth Circuit has refused to explicitly adopt either the
Fourth or Fifth Circuits' tests for defining who is a "minister"
for the purposes of the exception.  See Alcazar v. Corp. of the
Catholic Archbishop of Seattle, 2010 WL 5029533, *3 (9th Cir.
December 10, 2010) ("the parties and amici have suggested that we
adopt a test of general applicability-either the test created by
the three-judge panel, a test of their own creation, or one of
the tests used by our sister circuits. We decline that
invitation").  Ninth Circuit law controls this case, and as such,
the Court will follow precedent and look broadly at plaintiff's
employment duties at Marist to determine whether he is, in fact,

a "minister" for the purposes of the exception.  See generally
EEOC v. Pac. Press Publ'g Assoc., 676 F.2d 1272 (9th Cir. 1982)
(abrogated on other grounds by Am. Friends Serv. Comm. Corp. v.
Thornburgh, 951 F.2d 957 (9th Cir. 1991)); Alcazar, 2010 WL
5029533.

Typically, the question of whether an employee is a
"minister" warrants little analysis.  Every Ninth Circuit case,
except one, that has applied the exception involved actual or
prospective members of the clergy.  See Elvig, 375 F.3d 951
(plaintiff was a pastor at a Presbyterian church); Werft v.
Desert S.W. Annual Conference of the United Methodist Church, 377
F.3d 1099 (9th Cir. 2004) (plaintiff was a minister at a
Methodist church); Bollard, 106 F.3d 940 (plaintiff was a novice
Jesuit priest); Alcazar, 2010 WL 5029533 (plaintiff was a
seminarian at a Catholic church).

I find that the present case, however, is distinguishable
from the cases cited above.  Here, there can be no dispute that
plaintiff is not an actual or prospective member of the clergy.
Evidence of this fact is found in plaintiff's employment
contract.

Plaintiff's contract with defendant Archdiocese of Portland
is titled "Employment Agreement for a Lay Teacher."  Moreover,
plaintiff's official job description is that of
"Administrator/Teacher."  There is nothing in the contract that
establishes plaintiff as an actual or prospective minister.
Plaintiff further argues that, at all times, Marist treated him

Page 6 - OPINION AND ORDER

as a lay academic teacher, and not someone responsible for the spiritual development and religious training in the tenets of the Catholic faith. Therefore, I find that plaintiff is a lay employee for purposes of the First Amendment's ministerial exception.

The Ninth Circuit addressed this issue three times. See Pac. Press, 676 F.2d 1272; EEOC v. Fremont Christian Schools, 781 F.2d 1362 (9th Cir. 1986); Green v. Concordia Univ., 2010 WL 3522352 (D.Or. June 23, 2010). In Pacific Press, an editorial secretary sued her employer, a non-profit religious publishing house, for employment discrimination. Pac. Press, 676 F.2d at 1278. The court held that permitting plaintiff's claims to go forward did not violate the First Amendment, despite the fact that some of plaintiff's job duties were partially religious in nature. The court stated that plaintiff's job duties "were more analogous to those of the support staff at the seminary and those of the regular faculty at [a sectarian college] . . . than to the duties of a minister." Id.

In Fremont, a teacher sued her employer, a Christian school, for sexual discrimination pursuant to the school's health insurance policy. Fremont Christian, 781 F.2d at 1365. The court cited to other cases within the Ninth Circuit that analyzed the ministerial exception, and then held, without further discussion, that "the duties of the teachers at Fremont Christian School do not fulfill the function of a minister." Id. at 1370.

Defendants rely on the only case in the Ninth Circuit where the court held that the ministerial exception applied to a lay person.  See Green, 2010 WL 3522352.  Green involved an applicant to a Christian college's "Director of Christian Education" program, wherein the applicant's job duties would include leading devotions and bible study groups, teaching Lutheran Confirmation classes, and performing ministerial services.  Id. at *5.  Green held that the applicant constituted a "minister" under the Fifth Circuit's test, stating that the "functional approach test is clearly met since Green would be required to perform at least some religious duties and responsibilities."  Id. (emphasis in original).  However, Green was decided before the Ninth Circuit expressly declined to adopt the "functional approach" test.  See Alcazar, 2010 WL 5029533 at *1.  Thus, while Green has not been officially overruled, its value as precedent is questionable in light of the Alcazar opinion.

Nevertheless, while the Ninth Circuit has not fully defined the scope of the ministerial exception, it appears limited to actual or prospective clergy members or persons whose duties make them the functional equivalent of ministers.

Defendants argue that as a teacher, plaintiff was the functional equivalent of a minister, stating that the "evidence in this case unequivocally establishes the basic truth that teaching is part of ministry."  Specifically, defendants contend that the subject matter of any course in Theology is unavoidably intertwined with questions of faith and church doctrine, even

rising to the level of evangelism.  Moreover, defendants' claim
that as a Theology teacher at Marist, plaintiff was speaking in
the place of the Archbishop of the Archdiocese of Portland.
Defendants also contend that as director of Marist's Christian
Service Experience program, plaintiff was counseling students in
Catholic religious values.  It is undisputed that at least some
of plaintiff's job duties involved religion.  The question,
however, is whether plaintiff's duties as a teacher and
administrator were effectively equivalent to those of a minister.

     The parties do not dispute that approximately half of
Marist's student body is not of the Catholic faith.  Further, the
parties do not dispute that during the annual open house for
incoming freshman, Marist emphasized that teaching the Catholic
faith would not occur in the classroom and that no Theology
teacher would use the classroom to promote the Catholic religion.
Plaintiff argues that these facts support his contention that his
job duties as teacher and administrator were academic rather than
ministerial.

     Moreover, plaintiff contends that none of his job duties
rendered him the functional equivalent of a minister.
Plaintiff's duties never consisted of spreading the faith, or
facilitating or participating in religious ritual or worship.
Although plaintiff attended services with students in a
supervisory capacity, as all Marist faculty were required to do,
plaintiff argues that he never had a leadership role.
Depositions from Mr. Conroy, Marist's vice-principal, and Ms.

Ferrari, Chair of the Theology department, support plaintiff's contention that liturgy, prayer and attempts to convert non-Catholics were never a part of his Theology classes.

Therefore, I find that plaintiff has introduced sufficient evidence to suggest that his job duties "were more analogous to those of the support staff at the seminary and those of the regular faculty at [a sectarian college] . . . than to the duties of a minister." Pac. Press, 676 F.2d at 1278. Accordingly, I find that at least genuine issues of material fact remain as to whether plaintiff is a "minister" within the First Amendment's free exercise clause.

B.  The Establishment Clause

Defendants' next argue that the Establishment clause provides an independent basis for this court to use the ministerial exception, in that it prevents excessive government entanglement with religion. Bollard, 196 F.3d at 948. Entanglement has both substantive and procedural dimensions. Id. On a substantive level, entanglement occurs where a religious organization's freedom to choose its ministers is at stake. Id. at 949.

On a procedural level, entanglement might result from a protracted legal process pitting a religious organization and the state as adversaries. Id. The potential for protracted government surveillance of the activities of a religious institution poses the gravest concern under the Establishment clause. Id. The dangers, however, of procedural entanglement

Page 10 - OPINION AND ORDER

are most acute where there is also a substantive entanglement at
issue.  Id.

    The parties fail to cite to any Ninth Circuit authority,
other than Bollard, that discuss the parameters of impermissible
procedural entanglement.  Here, defendants' reasons for
plaintiff's termination relate to budgetary shortfalls and his
performance as a teacher, reasons which seemingly do not in any
way implicate entanglement with religion.

    Nevertheless, defendants argue that excessive procedural
entanglement has already occurred in this case because Ms.
Ferrari was deposed on the sharp division among members of the
Theology Department about the proper role of liturgy in the
classroom, implicating church doctrine.  Further, defendants'
argue that such entanglement will continue unless summary
judgment is granted because the court will have to adjudicate the
appropriateness of Marist's determination that plaintiff was not
the best person to teach Catholic faith-based Theology courses.

    Plaintiff asserts that Marist replaced him with a younger
and less-qualified teacher, not that defendants retained somebody
who was a better Catholic.  Accordingly, plaintiff maintains that
his claim is not related to church governance or doctrine.  To
support this assertion, plaintiff emphasizes that the single
reason Marist proffered for his termination was budgetary
shortfalls.  Plaintiff further argues that ample evidence
demonstrates that his performance as a classroom teacher was not
a factor in Marist's decision to terminate him, and that Mr.

Page 11 - OPINION AND ORDER

Conroy's assertion to the contrary was mere pretext.  Regardless, plaintiff alleges that religious beliefs are not relevant; rather, the court would only need to evaluate economic factors or classroom performance, which the court routinely evaluates in employment discrimination cases.  Thus, plaintiff argues that adjudicating this age discrimination case will not entangle the court in religious matters.

I find that defendants' entanglement argument hinges, at least in part, on whether plaintiff is defined as a "minister." If plaintiff is found to be a "minister" within the exception, substantive entanglement issues may be implicated, thereby strengthening defendants' claim.  However, as the record now stands, and viewing the evidence in the light most favorable to the nonmoving party, I find again that there exists at least genuine issues of material fact in regard to defendants' entanglement claim.

<u>CONCLUSION</u>

Defendants' motion for summary judgment (doc. 58) is DENIED. Plaintiff's motion to strike defendants' exhibits and declarations (doc. 72) is DENIED.

IT IS SO ORDERED.

Dated this 16 day of March 2011.


_____ /s/ Ann Aiken _____

Ann Aiken
United States District Judge

Page 12 - OPINION AND ORDER